## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DR. JAY S. BOWMAN,<br><br>             Plaintiff,<br><br>v.<br><br>DENTSPLY SIRONA, INC.,<br><br>             Defendant. | Case No.<br><br>Hon. _____<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

### COMPLAINT

Plaintiff Dr. Jay S. Bowman ("Dr. Bowman"), by his attorneys, files this Complaint against Defendant Dentsply Sirona, Inc. ("Dentsply" or "Dentsply Sirona") and alleges as follows:

### <u>NATURE OF THIS ACTION</u>

1.     This is a civil action by Dr. Bowman against Dentsply for breach of contract, conversion, unjust enrichment, and other wrongful acts related to Dentsply's determination not to pay Dr. Bowman for his significant contributions to Dentsply's business and successful product lines.  Specifically, Dr. Bowman provided several new and innovative products and accompanying market ideas and trade/service names to Dentsply's predecessor company, as well as marketing and promotion of those products.  Because of Dr. Bowman's expertise and knowledge in the field of orthodontics, these product packages were first to market or otherwise command significant market value.  Dr. Bowman's renown and reputation also established these products as on-brand, in-demand

products with global market power.  Dr. Bowman has been damaged by Dentsply's unilateral and willful decision to accept the benefits Dr. Bowman has provided under the parties' agreement(s) and to refuse to pay for them as required by law and equity.

## PARTIES

2.      Dr. Bowman is an individual with his principal place of business at 1314 West Milham Avenue, Portage, MI 49024, and residence at 257 Autumns Way Blvd., Kalamazoo, MI 49009.

3.      On information and belief, Dentsply Sirona Inc. is a corporation filed and existing under the laws of the State of Delaware, with its principal place of business at 3320-B, Ballantyne Corporate Pl Charlotte, NC 28277. USA.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court has general and specific personal jurisdiction over Dentsply Sirona for at least the following reasons: Dentsply Sirona has registered to do business in the state of Michigan. Its registered address in the state is 28175 Haggerty Road, Novi, MI 48377.

6.      Upon information and belief, Dentsply Sirona also carries on a continuous and systematic part of its business within the state, as it sells products to orthodontics professionals and organizations within the state and has sales representatives who work and live in the state.  Dentsply Sirona has also transacted business within the state,

including directly with Dr. Bowman, who has been contractually retained to promote the products for which Dentsply Sirona owes him a royalty as set forth herein.  Dentsply Sirona has also directed communications directly to Dr. Bowman, and has committed tortious acts with the knowledge that they would cause injury within the state of Michigan, also as set forth herein.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this lawsuit occurred, and a substantial part of property that is the subject of this lawsuit is situated, within this judicial district.

## LEGAL AND FACTUAL BACKGROUND

8.     Dr. Bowman is an orthodontist of worldwide renown.  Although his practice of orthodontic medicine is well established from his longstanding experience in the field – he has almost forty years of experience – he is also an orthodontics innovator, educator, and trend-setter.  Dr. Bowman's ideas and products materially benefit numerous patients worldwide by offering convenience, comfort, and utility that they would otherwise be without.   Dr. Bowman's contributions have these efficacies because he studies and incorporates not just new scientific developments into his contributions to the field of orthodontics, but also the experiences, complaints, challenges, and reports of his patients. As set forth below, Dentsply and its product lines embody and have directly benefitted from Dr. Bowman's ideas and expertise.  Now, having established itself as the premier manufacturer of these products, Dentsply has repudiated its obligation to pay for them.

Dentsply's refusal to comply with its agreements with Dr. Bowman leave him with no recourse other than this Complaint.

9.      Dr. Bowman graduated from the School of Dental Medicine at Southern Illinois University in 1983.  He graduated with a Master of Science in Dentistry from the Saint Louis University Department of Orthodontics in 1985.   His publications and honorifics since then are too many to mention, but include: *inter alia*, Dr. Bowman is a member of the Edward H. Angle Society of Orthodontists, Diplomate of the American Board of Orthodontics and member of the College of Diplomates of the American Board of Orthodontics, Fellow of the Pierre Fauchard Academy International Honor Organization, Fellow of both the International and American College of Dentists, Fellow of the Faculty of Dental Surgery of Royal College of Physicians and Surgeons of Glasgow, Member of the Faculty of Dental Trainers of the Royal College of Surgeons of Edinburgh, and a charter member of the World Federation of Orthodontists.  He developed the Straightwire course at The University of Michigan, and is an Adjunct Associate Professor at Saint Louis University where he was honored with the Alumni Merit Award in 2005, a Clinical Assistant Professor at Case Western Reserve University, and a Visiting Clinical Lecturer at Seton Hill University.  Dr. Bowman has provided over 300 lectures in 39 U.S. States and 36 countries, published over 150 articles and book chapters internationally (including his book *Mini-implants in Orthodontics: Innovative Anchorage Concepts*), and has maintained a successful clinical practice for over 30 years.  Most recently he received the Orthodontic Education and Research Foundation Merit Award in 2017, and will be

honored with the J.A. Salzmann Award from the American Association of Orthodontics in 2022.

10.     Suffice to say, Dr. Bowman is accomplished and prolific.  Dr. Bowman has leveraged his enterprising approach to orthodontics to contribute to the innovations, education, and professionalism embodied in numerous orthodontics strategies and products.

11.     Dr. Bowman met John Bozman, Jr. ("Mr. Bozman, Jr.") at an American Association of Orthodontics trade show.  Dr. Bowman told Mr. Bozman, Jr. that he had several product ideas that he wished to coordinate producing with a manufacturer.  Mr. Bozman, Jr. introduced Dr. Bowman to John Bozman, Sr. ("Mr. Bozman, Sr."), President of Glenroe Technology, Inc. ("Glenroe," or "Glenroe Technology,"), to discuss Dr. Bowman's ideas.

12.     Glenroe is a company based out of Florida that the Bozman family owned and that primarily engaged in making injection-molded plastic products for orthodontics.

13.     Dr. Bowman confidentially shared several of his product ideas with the Bozmans, including his product specifications and branding ideas, for Wyred Lip Supports, measuring gauge, Duralight retention film, tongue away, and a mixing spatula.

14.     Glenroe liked the product ideas, and the parties orally agreed that Glenroe would produce these products and pay Dr. Bowman a 10% royalty on its gross sales in exchange for bringing the ideas to Glenroe.

15.     Dr. Bowman also agreed to provide consulting at specified rates, and to assist Glenroe by critiquing the products Glenroe developed on its own.

16.     Dr. Bowman's products were first-to-market in the niche markets they addressed or otherwise provided features and innovations above what other companies offered.

17.     Because of these advantages (as well as Dr. Bowman's tireless promotion of them at numerous conventions for orthodontics professionals), the products were successful.

18.     Glenroe and Dr. Bowman continued to amicably operate under their 2002 oral agreement until 2005, when it was memorialized as set forth below.

19.     Throughout this time, Dr. Bowman consulted directly with Glenroe, frequently from his home or office in Michigan, where he would receive product samples, phone calls, e-mails and other correspondence regarding the parties' business projects.  All product development, testing, design work, product concept names, advertising copy, slides created, lecture presentation, and promotion plans were completed in Kalamazoo, MI.

20.     In 2005, the parties memorialized their prior oral agreement in writing.

21.     The written agreement was intended to establish a set schedule for product-based royalty payments as well to establish a set consulting fee.

22.     In a contract dated January 1, 2005, the parties entered a contract intended to "supersede all past verbal agreements between Dr. Bowman and Glenroe Technology." **(Exhibit A.)**

23.     Pursuant to the written agreement, Dr. Bowman would "discuss and promote intellectual property developed and marketed for him by Glenroe Technology as an opinion leader or advocate." (*Id.*)

24.     Dr. Bowman further agreed to submit his product line ideas to Glenroe for evaluation, and if accepted, a payment of "10% gross will be paid bi-annually" by Glenroe to Dr. Bowman. (*Id.*).

25.     The agreement also specified that certain products had already been accepted and would continue to be paid for under the newly-memorialized agreement: "Royalties (10%) for all previously accepted intellectual property from Dr. Bowman is retroactively due and payable by January 1, 2005.  Product concepts include but are not limited to: Wyred Lip Supports, measuring gauge, Duralight retention film, tongue away, mixing spatula." (*Id.*)

26.     Although the agreement provides that it can be cancelled by either party, it also states that in the event of such cancellation, "[r]oyalties would….continued to be paid to Dr. Bowman for product sales of his intellectual property." (*Id.*)

27.     Thus, the contract provided, *inter alia,* a consulting component that was to be renewed annually for as long as the companies wished to have Dr. Bowman serve as a consultant that could be discontinued and a royalty agreement that continued whether or not Dr. Bowman served as a consultant. (*See id.*)

28.     This agreement was drafted by Glenroe through Mr. Bozman, Sr., and sent to Dr. Bowman at his home in Michigan, where it was signed and returned to Glenroe.

29.     Later the same year, the Bozmans decided to sell their business, Glenroe, to Dentsply International, Inc.

30.     In connection with the sale, Mr. Bozman Sr. remained with the company as a general manager. Mr. Bozman Jr., continued as vice president. Glenroe became Glenroe Technology, a business unit within Dentsply International, Inc.

31.     The sale was based in no small part upon Glenroe's valuable product lines (many of which Dr. Bowman had generated or contributed to):  the company was expected to add between $8,000,000-$9,000,000 to Dentsply International's annual product sales revenues.

32.     The parties signed an updated agreement in 2006.  **(Exhibit B.)**

33.     On information and belief, the fully executed 2006 agreement is in the possession of Defendant.

34.     Although the 2006 agreement remained identical in most respects, it was updated to add that a 10% royalty was due for previously-accepted intellectual property including two new product lines:  Aligner Chewies and Retainer Retrievers. (*Id.*)

35.     As with his earlier ideas, Dr. Bowman provided the product concepts, specifications, and even the branding and trade names utilized to market these products. The 2006 contract was also updated to reflect increased consulting fees. (*Id.*)

36.     The parties also signed a contract on January 6, 2009, that also reiterated and conformed to the earlier versions.  **(Exhibit C.)**

37.     As with the earlier agreements, these contracts were drafted by Glenroe Technology, then a division of Dentsply International, Inc., through Mr. Bozman, Sr., and

sent to Dr. Bowman at his home in Michigan, where Dr. Bowman signed them and returned to Glenroe Technology and Dentsply International, Inc.

38.     Product-development and manufacturing agreements are common in the industry.  Because orthodontists are often in the best position to observe the needs of their patients and develop mechanical tools to assist in meeting those needs, they often partner with product firms to generate prototypes, obtain any necessary FDA approval, and generate certain promotional materials or distribution networks.  Because such agreements are common in the industry, it is well known by both manufacturers and orthodontists that such product concepts should be kept confidential to retain their value until the products are launched.

39.     In keeping with that known and established practice in the industry, each of Dr. Bowman's agreements with Dentsply Sirona and its predecessors require that his ideas be kept confidential.

40.     Dr. Bowman and Dentsply Sirona also have NDA agreements regarding his ideas.

41.     As such, all of Dr. Bowman's ideas were trade secrets at the time they were conveyed to Dentsply Sirona (and/or its predecessors).

42.     Pursuant to these Agreements, Dr. Bowman has provided many very successful product ideas.  To date, Dentsply Sirona markets at least Aligner Tray Seaters, Aligner Chewies, Chewies, Retainer Retriever, SPAND-EZZ (a cheek expander), a Wyred Cheek Expander, a disposable expander, and Ortholip Guard, a Tuff Alignate Spatula/Tuff spatula, an Ultra Cement Spatula, an Orthodontic arch measurement device, an Aligner

Patient Kit, a Bracket Height Gauge, a Double-End Retractor (angled-end photo retractor) and kit (with heat and autoclavable versions) that were designed and disclosed to Dentsply Sirona by Dr. Bowman.

43.     Dr. Bowman's products are innovative, useful, marketable, and ultimately highly profitable, generating millions of dollars of revenue annually.

44.     Because Dr. Bowman is a particularly talented ideas man, his product concepts are the first to market in their product niche.

45.     Dr. Bowman has further contributed to the success of Dentsply's product lines not just by providing the product ideas themselves, but by leveraging his reputation to promote these products, establishing them as known brands in the orthodontics marketplace.

46.     As required by his contracts, Dr. Bowman has consistently and vigorously promoted these products in numerous lectures around the world and published articles and book chapters since 2005. In Dentsply's marketing materials, Dentsply itself has explicitly traded off Dr. Bowman's reputation and good will and the fact that he originated these products. (See, e.g., **Exhibit D**.)

47.     Dr. Bowman's marketing expertise and promotion of these products as a known Key Opinion ideas leader have established the products as the "on brand" option for numerous consumers and orthodontics practitioners.   He has paired his model reputation and expertise with these branded products for *twenty years*.

48.     As a result of Dr. Bowman's promotion of the products – which included not only providing tips and improvements to his business partner Glencoe and its successors,

but also attending events and trade shows to discuss the merits of these products, bringing samples, and otherwise establishing their brands – the product lines Dr. Bowman established are some of the most successful day-to-day products for orthodontics patients and consumers in the United States and globally.  In fact, the product recognition for Aligner Chewies in Orthodontics is the dominate adjunct for seating clear aligners (e.g. Invisalign).  These advantages and marketplace positioning exist through the present day.

49.     The quality of Dr. Bowman's ideas and the strength of his promotional efforts is reflected in the ever-increasing sales of the underlying products as reflected below:

## ROYALTY CHECK PAYMENTS

| DATE | AMOUNT | PAYOR |
|---|---|---|
| 1/27/2005 | $2,099.90 -(includes a $1,000 consulting fee) **$1,099.90** | Glenroe Technologies, Inc. |
| 7/1/2005 | **$7,710.73** | Sales Report |
| 3/10/2006 | $4,226.43 -(includes $3,000 annual fee) **$1,226.43** | Glenroe Technologies, Inc. |
| 8/28/2006 | **$2,898.00** | Sales Report |
| 2/22/2007 | $5,582.22 -(includes $3,000 annual fee) **$2,582.22** | Sales Report |
| 11/2/2007 | **$4,546.99** | Glenroe Technologies, Inc. |
| 2/15/2008 | **$4,232.37** | Glenroe Technologies, Inc. |
| 9/12/2008 | **$6,649.56** | Glenroe Technologies, Inc. |
| 3/26/2009 | **$5,201.56** | Glenroe Technologies, Inc. |
| 9/25/2009 | **$7,055.99** | Glenroe Technologies, Inc. |
| 4/7/2010 | **$8,864.41** | Glenroe Technologies, Inc. |
| 7/14/2010 | **$8,834.51** | Glenroe Technologies, Inc. |

| July – December 2010 | **$3,466.53** | Sales Report |
|---|---|---|
| 3/2/2011 | **$7,630.24** | Glenroe Technologies, Inc. |
| 8/25/2011 | **$10,558.41** | Glenroe Technologies, Inc. |
| Unknown Date (Q2 2011) | **$4,772.49** | Sales Report |
| 1/20/2012 | **$13,801.37** | Glenroe Technologies, Inc. |
| 7/25/2012 | **$19,180.31** | Glenroe Technologies, Inc. |
| 2/20/2013 | **$17,776.20** | Glenroe Technologies, Inc. |
| 1/1/2013 – 6/30/2013 | **$22,504.72** | Sales Report |
| 11/22/2013 | **$10,143.17** | Glenroe Technologies, Inc. |
| 1/1/14 – 6/30/14 | **$28,705.99** | Sales Report |
| 10/14/2014 | **$11,686.70** | Denstply Raintree Essix |
| 1/13/2015 | **$14,864.01** | Denstply Raintree Essix |
| 7/7/2015 | **$29,728.27** | Denstply Raintree Essix |
| 4/19/2016 | **$22,327.77** | Denstply Raintree Essix |
| 7/6/2016 | **$62,114.20** | Check Request – Dentsply International |
| 7/12/2016 | **$109,408.04** | Denstply Raintree Essix |
| 1/4/2017 | **$45,924.30** | Check Request – Dentsply International |
| 7/18/2017 | **$57,961.19** | Denstply Sirona Orthodontics |
| 2/1/2018 | **$70,487.17** | Denstply Sirona Orthodontics |
| 7/26/2018 | **$84,766.94** | Denstply Sirona Orthodontics |
| 1/17/2019 | **$93,556.64** | Denstply Sirona Orthodontics |
| 7/9/2019 | **$117,619.41** | Denstply Sirona Orthodontics |
| 1/16/2020 | **$124,447.25** | Denstply Sirona Orthodontics |
| 7/23/2020 | **$69,081.75** | Denstply Sirona Orthodontics |
| 2/5/2021 | **$98,662.87** | Denstply Sirona Orthodontics |
| 7/20/2021 | **$161,390.82** | Denstply Sirona |

50.     On information and belief, the payments identified above with payor "Sales Report" were paid by Glenroe.

51.     In 2016, Sirona Dental Systems, Inc. merged with Dentsply International, Inc., in a $14.5 billion dollar deal to become Dentsply Sirona.  Dentsply Sirona assumed all of the contracts and other obligations of Dentsply International, Inc., including Dentsply's agreement with Dr. Bowman, and continued to pay Dr. Bowman his royalty pursuant to the terms of that agreement.

52.     As indicated above, Dentsply Sirona paid Dr. Bowman his 10% royalty for his products for several years following the merger and its assumption of Dr. Bowman's products and contract(s).

53.     In July 2021, Dr. Bowman received a phone call from Dominique Mondeau, then vice president of Dentsply Sirona.

54.     Mr. Mondeau informed Dr. Bowman that Dentsply Sirona would be discontinuing royalty payments to Dr. Bowman because Dentsply Sirona claimed it did not know for certain whether Dr. Bowman in fact generated the ideas for the products he had been paid for.

55.     Although he made the assertion, Mr. Mondeau was unable to supply any reason, rationale, or evidence that someone other than Dr. Bowman had generated the product concepts for which Dr. Bowman had been paid.

56.     As set forth above, the written agreements expressly specify that Dr. Bowman supplied the disputed product concepts.

57.     Dr. Bowman did, in fact, provide these ideas, and Mr. Mondeau's assertion was made without evidence or a basis in fact.  Dr. Bowman explained to Mr. Mondeau that

Dr. Bowman was the creator, inventor, and supplier of his intellectual property to Dentsply Sirona.

58.     Thereafter, on August 9, 2021, Dr. Bowman received a royalty check from Dentsply Sirona and the matter appeared to be resolved.

59.     On October 4, 2021, Dr. Bowman received a letter from Dentsply Sirona. The letter did not assert that Dr. Bowman had failed to generate the product ideas that Dentsply was now selling for millions of dollars annually, as had previously been suggested.

60.     Instead, the letter claimed that Dr. Bowman was not entitled to payment because he had not obtained "a patent" on the product concepts that he provided and marketed to Dentsply.

61.     In response, Dr. Bowman, through his counsel, explained that no patent was required by operative contracts and that the included product lines were expressly referred to as being the basis for ongoing royalty payments.

62.     On February 3, 2022, Dentsply Sirona, now through counsel, responded. Dentsply Sirona no longer asserted that Dr. Bowman had not himself generated the product concepts at issue, and only obliquely asserted that no patent had been obtained.

63.     Dentsply Sirona now contended that Dr. Bowman was not due a royalty because the agreements were forward-looking only and no payment was due for concepts that had been submitted prior to the 2009 contract.

64.     Dentsply Sirona's contention contradicts the plain language of the parties' agreements, which specifically lists products provided to Dentsply Sirona from Dr. Bowman, as well as the course of conduct of the parties for the preceding two decades.

65.     Dentsply Sirona's shifting explanations for its contention that Dr. Bowman is not entitled to ongoing royalty payments reflect the willful and disingenuous character of its position.

66.     Dentsply Sirona failed to pay Dr. Bowman's first quarterly royalty payment in 2022 as required by the parties' agreement(s).

67.     Dentsply Sirona has inherited the benefits of the contracts that bind it as well as Dr. Bowman's ongoing promotion and expertise.  Dr. Bowman fully expects that discovery will show that the real reason Dentsply Sirona wishes to discontinue payment is the degree of success his products have established in the marketplace.  As this hardly justifies a party to breach its agreements in either law or equity, this Complaint follows.

## COUNT I: Breach of Contract

68.     Dr. Bowman realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

69.     Dr. Bowman and Dentsply Sirona are parties to valid and enforceable written and oral agreement(s), under which Dentsply Sirona agreed to pay Dr. Bowman a bi-annual royalty on the gross sales of his products.

70.     Under the Parties' agreements, Dentsply Sirona received valuable product ideas and Dr. Bowman's assistance with product development, marketing, promotion, and establishment of these product lines in the marketplace.  Dr. Bowman continues to promote Dentsply Sirona's products nationally and internationally in lectures and publications (e.g., twenty-five lectures and 3 book chapters in 2021-2022 alone).

71.     Dentsply Sirona has breached the Parties' contractual agreements by failing to pay Dr. Bowman's royalty as agreed, and otherwise repudiating its agreements with Dr. Bowman.

72.     As a direct and proximate result of Dentsply Sirona's contractual breaches, Dr. Bowman is entitled to recover damages in an amount exceeding $75,000 to be determined at trial, plus prejudgment interest.

## COUNT II: Equitable Accounting

73.     Dr. Bowman realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

74.     Dr. Bowman is entitled to a 10% royalty on all gross sales of products provided to Dentsply Sirona and/or its predecessors.

75.     The revenue and sale information related to those products, including those sold to other distributors, nationally, or internationally, is exclusively within the custody and control of Dentsply Sirona.

76.     The parties' agreement(s) have mutual requirements, as Dr. Bowman was asked to promote the products, and also to provide product ideas for consideration. The transactional information as to sales revenue, however, is exclusively in the custody and control of Dentsply Sirona.

77.     Dentsply Sirona has often, but not always, provided reports regarding the revenue generated by Dr. Bowman's products. Dr. Bowman has no information regarding the sales revenue generated by his products for at least the last two financial quarters of 2021.

78.     As a result, Dr. Bowman is uncertain of the total amount he is entitled to recover.

79.     Dr. Bowman is therefore equitably entitled to a full accounting of the sales of his products by Dentsply Sirona.

### COUNT III: Unjust Enrichment

80.     Dr. Bowman realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

81.     In the alternative to Count I, Dentsply Sirona has been unjustly enriched. Dr. Bowman conferred a benefit upon Dentsply Sirona and its predecessors in the form of valuable and trade secret product concepts, ideas, designs, specifications, and trade names/trademarks.  Dr. Bowman further conferred a benefit by promoting, marketing, and

helping to establish these products as the premier products in the field and otherwise creating demand for their sale.  Dr. Bowman further conferred a benefit by providing insight, critique, and feedback regarding the development and features of these products.

82.    Dentsply Sirona knowingly accepted these benefits.

83.    The reasonable value of the benefits conferred to Dentsply Sirona and/or its predecessors meets or exceeds a 10% royalty on gross sales.  This figure excludes interest, which Dr. Bowman also seeks.

84.    Dr. Bowman has a reasonable expectation of receiving this sum from Dentsply Sirona.

85.    To the extent Dentsply Sirona takes the position that neither its agreement(s) with Dr. Bowman nor any other contract obligates it to pay the outstanding balance at issue, Dentsply Sirona unjustly enriched itself by accepting Dr. Bowman's ongoing promotion of its products and the highly competitive position Dr. Bowman's ideas and promotion placed its products in without paying for them, or the interest accumulated on Dentsply Sirona's outstanding balance.

86.    The publication of Dr. Bowman's trade secrets, concepts, and ideas ensured that Dr. Bowman was unable to sell or contract for them with a different manufacturing entity on an exclusive basis.

87.    Dr. Bowman has otherwise invested time, effort, and intellect to the parties' joint manufacturing venture that he did not expend in other profitable areas.

88.    An inequality to Dr. Bowman has resulted from Dentsply Sirona's retention of these benefits. It would be inequitable to allow Dentsply Sirona to retain the benefits it

or its predecessors solicited and received from Dr. Bowman without providing past and ongoing compensation for those benefits.

89.     As a direct and proximate result of these acts, Dr. Bowman has been harmed in an amount exceeding $75,000 to be determined at trial.

**COUNT IV: Promissory Estoppel**

90.     Bowman realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

91.     Dentsply Sirona and/or its predecessors solicited Dr. Bowman for his ideas and efforts to promote its products, promising to pay Dr. Bowman a set percentage of the gross revenue generated by the products.

92.     Dentsply Sirona intended to induce Dr. Bowman to provide his confidential trade secret and otherwise valuable advice, information, and promotion, and Dr. Bowman did, in fact, rely on Dentsply Sirona's promises, as demonstrated by Dr. Bowman's providing those efforts and information to Dentsply Sirona and/or its predecessors.

93.     The enforcement of Dentsply Sirona's promise to pay a royalty to Dr. Bowman is necessary to prevent injustice, and Dr. Bowman is entitled to damages in an amount exceeding $75,000 to be determined at trial, plus interest.

**COUNT V:  Conversion**

94.     Dr. Bowman realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

95.     Dentsply Sirona has wrongfully exerted domain over Dr. Bowman's personal property in denial of or inconsistent with the rights therein.

96.    Dr. Bowman has a protectible interest in the trade secrets comprised of his product concepts, ideas, trade names, specifications, and features of the products at the time he conveyed them to Dentsply Sirona and/or its predecessors.

97.    These trade secrets relate to or concern tangible items, as they have been disclosed to the public and are now represented in successful, valuable, and in-demand international product lines.

98.    The reasonable value of the trade secrets conveyed to Dentsply Sirona and/or its predecessors was a 10% royalty to be paid to Dr. Bowman for the life of the product.

99.    Dentsply Sirona has retained the value of the trade secrets, ideas, and products which allowed them to be first-to-market in several niche areas, and establish these successful product lines, but has willfully failed to compensate Dr. Bowman for those trade secrets as agreed.

100.    As a direct and proximate result of these acts, Dr. Bowman has been harmed in an amount exceeding $75,000 to be determined at trial.

101.    Dr. Bowman is entitled to treble damages under MCL 600.2919a.

## **COUNT VII: Declaratory Judgment**

102.    Dr. Bowman realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

103.    An actual case and controversy exists between the parties with respect to whether or not Dentsply Sirona can discontinue payments to Dr. Bowman under the law and/or under the parties' agreement(s).

104.    Dentsply Sirona may not discontinue payments to Dr. Bowman: the agreement(s) between the parties are valid, enforceable contracts that have been fully performed by Dr. Bowman.

105.    Dr. Bowman is entitled to receive ongoing payment of royalties to him for the life of the products covered by the parties' agreement(s).

106.     Dr. Bowman seeks a statement and adjudication by the Court that he is entitled to the payments specified in the agreement(s) on an ongoing basis.

## PRAYER FOR RELIEF

**WHEREFORE**, Bowman respectfully requests that this Court enter judgment against Dentsply as follows:

A.     Enter a judgment in favor of Dr. Bowman holding that Dentsply Sirona breached the Parties' contract(s), and award Dr. Bowman direct and consequential damages resulting from Dentsply Sirona's contractual breaches and treble damages for Dentsply Sirona's conversion;

B.     A declaration that Dentsply Sirona is obligated to pay Dr. Bowman continuing and ongoing royalties as provided in the parties' agreement(s);

C.     Award Dr. Bowman equitable relief and a monetary award as alleged and requested herein;

D.     Award Dr. Bowman all pre-judgment and post-judgment interest;

E.     Award Dr. Bowman any and all applicable multipliers for the damages suffered and applicable as alleged herein;

F.     Award Dr. Bowman its reasonable attorneys' fees to the fullest extent permitted by law, in addition to all costs and disbursements permitted by law; and

G.     Award Dr. Bowman all other and further relief as this Court deems just and equitable.

## JURY DEMAND

Bowman hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**MILLER JOHNSON**

Dated: March 3, 2022.            By:     /s/Jacob L. Carlton
                                         Amy E. Murphy (P82369)
                                         Jacob L. Carlton (P84859)
                                         45 Ottawa Avenue SW, Suite 1100
                                         Grand Rapids, MI 49503
                                         (616) 831-1700
                                         murphya@millerjohnson.com
                                         carltonj@millerjohnson.com

**MASLON LLP**

                                 By:     /s/Larina A. Alton
                                         Larina A. Alton (#0388332)
                                         Erica A. Holzer (#0395234)
                                         3300 Wells Fargo Center
                                         90 South Seventh Street
                                         Minneapolis, MN 55402-4140
                                         Telephone: (612) 672-8200
                                         larina.alton@maslon.com
                                         erica.holzer@maslon.com

**ATTORNEYS FOR PLAINTIFF**

MJ_DMS 34421343v1